# EXHIBIT 4

# DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

# Contractual Indemnity Policy Coverage



ace usa



ACE American Insurance Company
1601 Chestnut Street
Philadelphia, Pennsylvania 19101-1484

**ace usa**

hereinafter, this "Policy" issued by the insurance company indicated above

# Declarations-
# Contractual Indemnity Policy

| Policy Number | CTO - G21739327 |
|---|---|

Item 1.  Named Insured and Address

Allied Holdings, Inc.
160 Clairemont Ave.
Suite 200
Decatur, GA  30030

Item 1.A.  Producer and Address

USI of Georgia
3575 Habersham, at Northlake,
Bldg. 1
Tucker, GA  30084

Item 2.  The Named Insured Is:

☒ Corporation    ☐ Partnership    ☐ Individual    ☐ Other:_____

Item 3.  Policy Period:  From: 03/01/2003 to 08/01/2003 at 12:01 at the Named Insured's mailing address stated above.

Item 4.  Limits of Insurance
  A.  Aggregate Limit                  $ See End't. 5
  B.  Deductible Loss Limit            $ See End't. 5

Item 5.  Advance Premium               $ 6,000,000

  Rate per $100 of Remuneration       $ See End't. 3

  Minimum Premium:                     $ 6,000,000

  Payment Frequency  ☒ annual; or ☐ semi annual; or ☐ quarterly; or ☒ monthly

  Deposit Premium payable at Inception: $ 6,000,000 ; and _____ Installments each in the amount of $_____.

Item 6.  Reference Policy(ies):

This policy applies only to "Deductible Endorsement Loss" under the following policies:

| Insurer | Policy Number | Policy Period | Estimated Remuneration |
|---|---|---|---|
| ACE American Insurance | ISAH07934312 | 03/01/03 - 08/01/03 | See End't. 4 |
| ACE American Insurance | ISAH07934312 | 03/01/03 - 08/01/03 | Included |
| | | | |
| | | | |

LD-6Z86 (05/00)

Page 1 of 2

Item 7.  Forms and Endorsements attached at inception to this policy:
Contractual Indemnity Policy  LD-6Z87
Signature Page CC-1K11d or CC-3R87j

```
Schedule of Named Insureds   CC1E15
Composite Rate Endorsement   CC1E15
Exposure Amendment           CC1E15
Limits of Insurance          CC1E15
```

Issued_____                              _____
                                                    (Authorized Representative)

LD-6Z86 (05/00)                                                    Page 2 of 2

POLICY NUMBER: CTO G21739327



ace usa

herein, this "Policy" issued by the insurance company indicated above

# Contractual Indemnity Policy

| Policy Number | CTO G21739327 |

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words, "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section II – Definitions.

SECTION I – INSURING AGREEMENT

A. **COVERAGE**

We agree to indemnify you for those sums that the "Insured" is obligated to pay to the "Insurer" for all "Deductible Endorsement Loss" paid by such "Insurer" under any "Referenced Policy". But:

1. The amount we will pay is limited as described in SECTION III – Limits of Insurance; and

2. We have no obligation to investigate or defend any claim or suit against any "Insured", but we shall have the right and be given the opportunity to be associated in the defense of any claim or suit against any "Insured" involving a "Loss" or "Allocated Loss Adjustment Expense" covered under this policy.

B. **EXCLUSIONS**

We will not pay for:

1. Any claim service fees, including but not limited to the investigation, administration, adjustment, and settlement services for claims or suits, provided or offered in conjunction with, or in addition to the "Referenced Policy";

2. Any surcharges, assessments, fund contributions or other charges assessed by a government or other regulatory authority in conjunction with the payment of any "Deductible Endorsement Loss".

SECTION II – DEFINITIONS

A. "**Allocated Loss Adjustment Expense**" means the expenses, costs, and interests in connection with the investigation, administration, adjustment, settlement or defense of any claim or suit under a "Referenced Policy" that an "Insurer" allocates to a specific claim or suit which the "Insured" is obligated to pay to the "Insurer" under any "Referenced Policy." "Allocated Loss Adjustment Expense" does not include salaries, wages, benefits or expenses of employees of an "Insurer."

B. "**Deductible Endorsement Loss**" or "**Deductible Endorsement Losses**" means that portion of "Loss" and "Allocated Loss Adjustment Expense" paid by the "Insurer" for which the "Insured" must reimburse the "Insurer" but up to the amount of the Deductible Loss Limit shown in Item 4.B. of the Declarations.

C. "**Insured**" means any person or organization which is insured under a "Referenced Policy" with respect to a "Loss" or "Allocated Loss Adjustment Expense" for which you seek payment under this policy.

LD-6Z87 (05/00)

D. **"Insurer"** means the insurance company identified in Item 6. of the Declarations as issuing a "Referenced Policy".

E. **"Loss"** or **"Losses"** means the amount paid by an "Insurer" to a claimant in satisfaction of a claim or suit under a "Referenced Policy". "Loss" shall apply on the same basis (per accident, per occurrence, per person or per claim) as the deductible amount applies in the "Referenced Policy".

F. **"Minimum Premium"** means, as specified in Item 5 of the Declarations, the minimum amount to be accepted and retained by us as the premium for this insurance, the actual premium due and payable will be computed as set forth below in Section IV, A.. "Premium Computation" of this policy, may exceed the "Minimum Premium" due. If the policy is terminated prior to the original expiration date as specified in Item 3, the "Minimum Premium" shall be reduced pro-rata based on the number of days the policy is actually in effect as compared to the number of days in the original policy term.

G. **"Named Insured"** means the corporation, partnership, individual or other entity listed in Item 1 of the Declarations.

H. **"Referenced Policy"** or **"Referenced Policies"** means the insurance policy or policies listed in Item 6. of the Declarations.

**SECTION III – LIMITS OF INSURANCE**

A. **Aggregate Limit**

The most we will pay under this policy for all "Loss" and "Allocated Loss Adjustment Expense" included within the "Deductible Endorsement Loss" is the amount shown in Item 4.A. of the Declarations.

B. **Deductible Loss Limit**

Subject to Paragraph A. above, the amount shown in Item 4.B. of the Declarations is the most we will pay under this policy for any one "Deductible Endorsement Loss".

**SECTION IV – CONDITIONS**

A. **Premium Computation**

The "Advance Premium" shown in the Declarations applies as a deposit against the actual premium due. The actual premium will be computed after the policy ends based upon the amount of remuneration reported for the "Referenced Policies". The premium shall be adjusted within sixty (60) days after expiration of this policy at the rate shown in Item 5 of the Declarations. Premiums are due and payable on notice to the Named Insured shown in the Declarations. If the actual premium computed is less than the "Advance Premium" we will return the balance to you, subject to the "Minimum Premium". If the actual premium computed is greater than the "Advance Premium" previously paid, you will remit the balance to us.

B. **Maintenance of Other Insurance**

You will maintain all policies constituting the "Referenced Policy" in full force and effect during the policy period of this policy. If any of the policies constituting the "Referenced Policy" are not maintained in full force and effect, the insurance afforded by this policy shall not operate to replace any of such policies.

C. **Proof of Loss**

You will provide to us monthly statements of paid "Loss" and "Allocated Loss Adjustment Expense" under the "Referenced Policies" as proof of loss respecting payments of loss due under this policy.

D. **Changes**

The terms of this policy cannot be changed except by a written endorsement we issue to form a part of the policy. Notices to any agent or knowledge possessed by any agent or other person acting on our behalf does not change or waive any terms of this policy.

E. **Examination of Your Books and Records**

We may examine and audit your and the "Insured's" books and records, including the "Referenced Policies" insofar as they relate to this insurance policy at any time during the policy period and within ten years after the inception of this policy or until all "Loss" under the "Referenced Policies" have been settled, whichever is later.

F. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

G. **Cancellation**

1. You may cancel this policy by delivering it to us, or by mailing it by first class mail to the Company stating the data thereafter on which the cancellation will take effect.

2. We may cancel this policy by mailing by first class mail or delivering written notice of cancellation to the Named Insured in the Declarations. This notice shall state the date on which cancellation shall be effective, which date shall not be less than:

    (a) Ten days (10) after the date of mailing, if we cancel for non-payment of premium when due.

    (b) Thirty days (30) after the date of mailing, if the Company cancels for any other reason.

    The time of delivery of this policy to us, or the effective date and hour of cancellation stated in the Cancellation notice, shall be the end of the policy period.

H. **Legal Action Against Us**

No person or organization has a right under this policy to join us as a party or otherwise bring us into a suit asking for damages from you or an "Insured" or to sue us or an "Insured" on this policy unless all of its terms have been fully complied with.

We will not be liable for any losses that are not payable under the terms of this policy or that are in excess of the applicable Limits of Insurance under this policy.

I. **Representations**

By accepting this policy, you agree:

1. The statements in the Declarations and any Schedules or endorsements attached to this policy are accurate and complete;
2. Those statements are based on representations you made to us; and
3. We have issued this policy in reliance upon your representations.

J. **Sole Representative**

If more than one Named Insured is named in the Declarations, the person or organization named first shall have the power and authority to act on behalf of all "Insureds" under the "Referenced Policies" including but not limited to giving or receiving notices of cancellation, payment of premiums, furnishing proof of "Loss" or "Allocated Loss Adjustment Expenses", receiving and receipting for premium refunds, agreeing to any change or modification to this policy and giving or receiving notices to or from us.

K.  **Transfer of Rights of Recovery Against Others To Us**

If you or an "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. You and the "Insured" must do nothing after a loss to impair any such rights. At our request, you or the "Insured" will bring suit or transfer those rights to us and help us enforce them.

L.  **Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

M.  **Binding Arbitration**

Any controversy, dispute, claim or question arising out of or relating to this policy, including its interpretation, performance or non-performance by any party thereto or any breach thereof (hereinafter, collectively, Controversy) shall be referred to and resolved by three arbitrators through private, confidential arbitration. Such arbitrators shall be disinterested, neutral individuals who have experience and qualifications in the subject matter of the Controversy. The arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed by both parties.

One arbitrator shall be chosen by each party and the third by the two arbitrators so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may choose a total of two arbitrators who shall choose the third. If the arbitrators fail to select the third arbitrator within ten (10) days after both have been named, either party may apply to the Center for Public Resources Institute for Dispute Resolution for appointment of a third arbitrator from the Institute's panel of distinguished neutrals. In the event of the death, disability or incapacity of any arbitrator, a replacement shall be named pursuant to the process which resulted in the selection of the arbitrator to be replaced. The arbitrators may refrain from following the strict rules of law, and shall make their decision with regard to the custom and usage of the insurance business as of the effective date of this policy. The majority decision of the panel shall be final and binding on both the "Insured" and us. Judgement may be entered upon the award of the arbitrators in any court of competent jurisdiction. Except as otherwise specifically provided above, the arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

POLICY NUMBER: CTO G21739327

# SIGNATURES

| Named Insured<br>Allied Holdings, Inc. | | | Endorsement Number<br>1 |
|---|---|---|---|
| Policy Symbol<br>CTO | Policy Number<br>G21739285 | Policy Period<br>03/01/2003 to 08/01/2003 | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**BANKERS STANDARD FIRE AND MARINE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**BANKERS STANDARD INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE INDEMNITY INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE AMERICAN INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**INSURANCE COMPANY OF NORTH AMERICA**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**PACIFIC EMPLOYERS INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

**ACE FIRE UNDERWRITERS INSURANCE COMPANY**
1601 Chestnut Street, P. O. Box 41484, Philadelphia, Pennsylvania 19101-1484

*George D. Mulligan*
GEORGE D. MULLIGAN, Secretary

*Susan Rivera*
SUSAN RIVERA, President

**WESTCHESTER FIRE INSURANCE COMPANY**
1133 Avenue of the Americas, 32nd Floor, New York, NY 10036

*George D. Mulligan*
GEORGE D. MULLIGAN, Secretary

*Brian E. Dowd*
BRIAN E. DOWD, President

Authorized Agent

CC-1K11d (04/02) Ptd. in U.S.A.

# SCHEDULE OF NAMED INSUREDS

| Named Insured | Allied Holdings, Inc. | | Endorsement Number<br>2 (Page 1 of 2) |
|---|---|---|---|
| Policy Symbol<br>CTO. | Policy Number<br>G21739327 | Policy Period<br>03/01/2003 to 08/01/2003 | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**Allied Holdings, Inc.**
Allied, Inc.
AH Acquisition Corp.
Allied Industries Incorporated
Haul Insurance Limited
Haul Risk Management Services, Inc.
Link Information Systems, Inc.
Allied Southwoods, Inc.

**Allied Automotive Group, Inc.**
Allied Systems, Ltd. (GA)
Allied, Inc.
Allied Freight Brokers, Inc. (VA)
Automotive Transport Services, Inc. (GA)
B&C, Inc.
Commercial Carriers, Inc. (MI)
F.J. Boutell Driveway Company, Inc. (MI)
Innovative Car Carriers, Inc. (GA)
Inter Mobile, Inc.
Legion Transportation, Inc.
QAT, Inc. (MI)
RMX, Inc.
Ryder Automotive Operations, Inc.
Ryder Freight Broker, Inc. (MI)
Transport Support, Inc.
Ryder Automotive Carrier Services, Inc.

**AXIS Group, Inc.**
AXIS International, Inc.
AXIS National, Inc.
AXIS North America, Inc.
AXIS Truck Leasing, Inc.
AXIS Canada Company
Clairmont Driver Exchange Company, Inc.
CT Group, Inc.
CT Services, Inc.
Cordin Transport, Inc.

Authorized Agent

CC-1E15 Ptd. In U.S.A.

## SCHEDULE OF NAMED INSUREDS

| Named Insured | Allied Holdings, Inc. | | Endorsement Number<br>2 (Page 2 of 2) |
|---|---|---|---|
| Policy Symbol<br>CTO | Policy Number<br>G21739327 | Policy Period<br>03/01/2003 to 08/01/2003 | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company ||||

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Decatur Driver Exchange Company, Inc.
Kar-Tainer International (PTY) Limited
Kar-Tainer International Limited
Kar-Tainer International, Inc.
OSHCO, Inc.(MI)
R C Management Corp.
Terminal Service Co.
Leader Logistics, LLC

Authorized Agent

CC-1E15 Ptd. In U.S.A.

# COMPOSITE RATE AMENDMENT

| Named Insured | Allied Holdings, Inc. | | Endorsement Number 3 |
|---|---|---|---|
| Policy Symbol CTO | Policy Number G21739327 | Policy Period 03/01/2003 to 08/01/2003 | Effective Date of Endorsement 03/01/2003 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CONTRACTUAL INDEMNITY POLICY

It is understood that the Rate section of Item 5. of the policy Declarations is amended to read:

Rate per 1,000 of "Calculated Mile"   $30.8463

Authorized Agent

CC-1E15 Ptd. In U.S.A.

# EXPOSURE AMENDMENT

| Named Insured | Allied Holdings, Inc. | | | Endorsement Number 4 |
|---|---|---|---|---|
| Policy Symbol CTO | Policy Number G21739327 | Policy Period 03/01/2003 to 08/01/2003 | | Effective Date of Endorsement 03/01/2003 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CONTRACTUAL INDEMNITY POLICY

It is understood that the Estimated Remuneration column of the table in Item 6. of the policy Declarations is amended to read:

"Calculated Mile"
   194,513,010
    Included

Authorized Agent

CC-1E15 Ptd. In U.S.A.

## LIMITS OF INSURANCE

| Named Insured   Allied Holdings, Inc. | Endorsement Number 5 |
|---|---|
| Policy Symbol: CTO   Policy Number: G21739327   Policy Period: 03/01/2003 to 08/01/2003 | Effective Date of Endorsement 03/01/2003 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CONTRACTUAL INDEMNITY POLICY

It is understood that Item 4. Limits of Insurance, parts A. and B. are replaced by the following:

The first $500,000 per accident/Nil aggregate plus,

$500,000 per accident/$1,500,000 aggregate excess of $500,000 per accident/Nil aggregate plus,

$1,000,000 per accident/$1,000,000 aggregate excess of $1,000,000 per accident/$1,000,000 excess of $500,000 per accident/Nil aggregate.

Authorized Agent

CC-1E15 Ptd. In U.S.A.

POLICY NUMBER: CTO G21739327                                                                 ENDT. #6

# RETAINED LOSS COVERAGE

| Named Insured<br>Allied Holdings, Inc. | | | Endorsement Number<br>6 |
|---|---|---|---|
| Policy Symbol<br>CTO | Policy Number<br>G21739327 | Policy Period<br>03/01/2003 to 08/01/2003 | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement changes the policy effective on the inception date of the policy.

It is agreed that:

1. SECTION I – INSURING AGREEMENT is amended to include:

    We agree to indemnify you for those "Losses" and "Allocated Loss Adjustment Expense" paid by the "Named Insured" provided that a "Referenced Policy" written as an excess workers compensation policy would provide indemnification for that amount of "Loss" and "Allocated Loss Adjustment Expense" in excess of the "Self Insured Retention".

2. SECTION II – DEFINITIONS is amended to replace Definitions B and E with the following definitions:

    B. "Deductible Endorsement Loss" or "Deductible Endorsement Losses" means:

    1. For any "Referenced Policy" which is written on a deductible basis, that portion of "Loss" and "Allocated Loss Adjustment Expense" paid by the "Insurer" for which the "Insured" must reimburse the "Insurer":

    2. For any "Self Insured Retention" for which there is a "Referenced Policy" that is written as an excess workers compensation policy, that portion of "Loss" and "Allocated Loss Adjustment Expense" paid by the "Named Insured", provided that the "Loss" or "Allocated Loss Adjustment Expense" would be covered under the terms and conditions of such "Referenced Policy" if the "Loss" or "Allocated Loss Adjustment Expense" were in excess of the "Self Insured Retention";

    but up to the amount of the Deductible Loss Limit in Item 4.B. of the Declarations.

    E. "Loss" or "Losses" means the amount paid by an "Insurer" or by the "Insured" under a "Self Insured Retention", to a claimant in satisfaction of a claim or suit under a "Referenced Policy". "Loss" shall apply on the same basis (per accident, per occurrence, per person or per claim) as the deductible amount or "Self Insured Retention" applies in the "Referenced Policy".

3. SECTION II – DEFINITIONS is amended to add the following definition:

    I. "Self Insured Retention" is the amount retained by an "Insured" as shown in the Declarations as the retained limit of any "Referenced Policy" written as an excess workers compensation policy listed in Item 6 of the Declarations.

4. The "Self Insured Retention" is the amount shown as the Deductible Loss Limit in Item 4.B. Limits of Insurance.

All other terms, conditions and exclusions remain unchanged.

_____
Authorized Agent

LD-6Z88 (05/00) Printed in U.S.A.

POLICY NUMBER: CTO G21739327

# POLICYHOLDER DISCLOSURE NOTICE
# OF TERRORISM INSURANCE COVERAGE

| Named Insured<br>Allied Holdings, Inc. | | | Endorsement Number<br>7 | |
|---|---|---|---|---|
| Policy Symbol<br>CTO | Policy Number<br>G21739285 | Policy Period<br>03/01/2003 to 08/01/2003 | | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

You should be aware that under the Terrorism Risk Insurance Act of 2002 ("The Act") effective November 26, 2002, any losses caused by certified acts of terrorism under your existing coverage may be partially reimbursed by the United States under a formula established by federal law (applicability is subject to the terms and conditions of each individual policy). The Act was specifically designed to address the ability of businesses and individuals to obtain property and casualty insurance for terrorism and to protect consumers by addressing market disruptions and ensure the continued availability of terrorism coverage.

Under the terms of The Act, you may now have the right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Responsibility for Compensation under The Act is shared between insurance companies covered by The Act and the United States. Under the formula set forth in The Act, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible, which is paid by the insurance company providing the coverage.

We are providing you with the terrorism coverage required by The Act. The premium for the coverage is set forth below.

Terrorism Risk Insurance Act premium: $ 0 .

_____
Authorized Agent

TRIA11 (1/03)

POLICY NUMBER: CTO G21739327    ENDT. #8

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Allied Holdings, Inc. | | | Endorsement Number<br>8 | |
|---|---|---|---|---|
| Policy Symbol<br>CTO | Policy Number<br>G21739327 | Policy Period<br>03/01/2003 to 08/01/2003 | | Effective Date of Endorsement<br>03/01/2003 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The **Cancellation** condition is replaced by the following:

    1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    2. **All Policies In Effect For 60 Days Or Less**

        If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

        a. 10 days before the effective date of cancellation if we cancel for:

            (1) Nonpayment of premium; or

            (2) Discovery of fraud or material misrepresentation by:

                (a) Any insured or his or her representative in obtaining this insurance; or

                (b) You or your representative in pursuing a claim under this policy.

        b. 30 days before the effective date of cancellation if we cancel for any other reason.

    3. **All Policies In Effect For More Than 60 Days**

        a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

            (1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

            (2) Discovery of fraud or material misrepresentation by:

                (a) Any insured or his or her representative in obtaining this insurance; or

                (b) You or your representative in pursuing a claim under this policy.

            (3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

            (4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

            (5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

      (6) A determination by the Commissioner of Insurance that the:

         (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

         (b) Continuation of the policy coverage would:

            (i) Place us in violation of California law or the laws of the state where we are domiciled; or

            (ii) Threaten our solvency.

      (7) A change by you or your repreresentative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

   b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

      (1) 10 days before the effective date of cancellation if we cancel for a reason listed in Paragraph 3.a.(1) or 3.a.(2); or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

2. We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

   b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **1.**

   c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

   d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

   e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

   f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

_____
Authorized Agent

# EXTENSION ENDORSEMENT

| Named Insured    Allied Holdings, Inc. | Endorsement Number 9 |
|---|---|

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| CTO | G21739327 | 03/01/2003 to 08/01/2003 | | 08/01/2003 |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

CONTRACTUAL INDEMNITY POLICY

It is agreed that the expiration date is amended to read 01/01/2004.

Authorized Agent

CC-1E15 Ptd. In U.S.A.