# EXHIBIT 5

# DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

REINSURANCE AGREEMENT

This Reinsurance Agreement is entered into effective as of <u>March 1, 2003,</u> (the "Effective Date") between each insurance company designated as "Issuing Company" on the respective Addenda hereto, including Addenda that may be added after the Effective Date, (which company is or all of which companies collectively are hereinafter called the "Company") and <u>Haul Insurance Limited</u> , a <u>Cayman Islands</u> corporation, having its office and principal place of business at <u>2nd Floor, Buckingham Square, 720 West Bay Road, Grand Cayman, Cayman Islands</u> (hereinafter called the "Reinsurer").

In consideration of the payment of reinsurance premium and losses, and subject to the terms, conditions and limits of liability set forth below, the Reinsurer and the Company hereby agree as follows:

If the Company is constituted of more than one insurance company, this Agreement shall apply severally as between the Reinsurer and each such insurance company with respect to the Policy or Policies issued by each such insurance company. The rights and obligations provided for herein of any one insurance company will not be held, assumed or guaranteed by any other insurance company which is part of the Company. Each Addendum to this Agreement is hereby incorporated by reference in its entirety.

## ARTICLE I - DEFINITIONS

For purposes of this Agreement, the following terms shall have these meanings:

1.   "Allocated Loss Adjustment Expense" shall mean all expenses, costs and any interest incurred in connection with the investigation, administration, adjustment, settlement, litigation or defense of any claim or lawsuit (including without limitation declaratory judgment actions) that the Company, under its accounting practices, directly allocates to a particular claim, whether or not a loss or payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements; <u>provided, however,</u> that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of the Company's employees, or the Company's overhead and adjusters' fees.

2.   "Captive Retention Limits" shall mean the amount of the Reinsurer's liability hereunder for Paid Losses and paid Allocated Loss Adjustment Expense, as provided in the respective Addenda hereto.

3.   "Claims Adjusting Service" shall mean any entity indicated in the respective Addenda that the Company has selected to handle the Insured's claims.

4.   "Extra Contractual Obligations" shall mean those liabilities of the Company not covered under any other provision of this Agreement and which arise from the handling of any claim under a Policy reinsured hereunder, including but not limited to liabilities arising because of the following: failure by the Company to settle within the applicable Policy limit, or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement, or in the preparation of the defense or in the trial of any action against its insured, or in the preparation or prosecution of an appeal consequent upon such action. "Extra Contractual Obligations" shall not include those liabilities of the Company arising due to the Company's intentional, wanton or willful conduct, bad faith, fraud, or the Company's gross negligence, but shall include such liabilities if they arise from the actions of any Claims Adjusting Service selected at the request of the named insured under the Policies.

5.   "Incurred Losses" shall mean all Paid Losses, plus case reserves for unpaid losses under the Policies as estimated by the Company.

6.   "Loss in Excess of Policy Limits" shall mean the amount of any loss the Company is required to pay under the Policy that is beyond the limits provided on the applicable Policy. "Loss in Excess of Policy Limits" shall not include those liabilities of the Company arising due to the Company's intentional, wanton or willful conduct, bad faith, fraud, or the Company's gross

CAPTIVE.WPD
12/28/00

negligence, but shall include such liabilities if they arise from the actions of any Claims Adjusting Service selected at the request of the named insured under the Policies.

7.     "Occurrence," Accident," and "Products-Completed Operations Hazard" and "Occupational Disease" shall have the meanings provided for such terms in the respective Policies.

8.     "Paid Losses" shall mean amounts of Loss and Allocated Loss Adjustment Expense, as defined in the Polcies, paid by the Company pursuant to the Policies.

9.     "Policy" or "Policies" shall mean the insurance policies issued to Allied Holdings, Inc. or any of its subsidiaries, such policies described and listed as "Captive Policies" on the respective Addenda hereto (including Addenda that may be added after the Effective Date), including any extensions or endorsements to such Policies.

10.     "Reinsurer's Pro Rata Share" shall mean the percentage of any single Paid Loss that is reinsured hereunder. For example, if the Reinsurer's Captive Retention Limit applicable to a Paid Loss is $100,000, and the total amount of such Paid Loss is $400,000, the Reinsurer's Pro Rata Share with respect to such Paid Loss is 25%.

11.     "TF&L" shall mean, with respect to the Policies, premium taxes, fees for boards and bureaus, and liabilities for assessments and pools.

12.     "Unallocated Loss Adjustment Expense" shall mean claim handling charges paid to the Claims Adjusting Service, or other claims related charges with respect to the Policies that are not categorized as "Allocated Loss Adjustment Expense."

## ARTICLE II - REINSURING CLAUSE

The Reinsurer agrees to reinsure and indemnify the Company for 100% of the following losses, liabilities and expenses arising from or related to claims under the Policies:

1. all Paid Losses (from first dollar) up to the applicable Captive Retention Limits provided in the respective Addenda hereto; and

2. all Unallocated Loss Adjustment Expense, in the amounts provided in the respective Addenda hereto; and

3. Allocated Loss Adjustment Expense, in the proportions stated in the respective Addenda hereto, related to Paid Losses and to claims under the Policies, regardless of whether a loss or payment indemnifying a claimant is made.

In addition, the Reinsurer will be liable for the Reinsurer's Pro Rata Share of any amounts paid under the Policies for Extra Contractual Obligations, to the extent permitted under applicable law, with respect to any Paid Loss, and for the Reinsurer's Pro Rata Share of any amounts paid by the Company for Loss in Excess of the Policy Limit with respect to any Paid Loss.

## ARTICLE III - LOSS SETTLEMENTS, FOLLOW THE FORTUNES; RECORDS AND RECOVERIES

1.     While the Reinsurer does not undertake to investigate or defend claims or suits under the Policies, it shall, where permitted by law, have the right and opportunity to associate, at its own expense, with the Company and its representatives in the defense of any claim, suit or proceeding involving this reinsurance under this Agreement. The Reinsurer's liability hereunder shall attach simultaneously with that of the Company, and shall follow the fortunes of the Company under the Policies, subject to the terms and conditions of this Agreement. All settlements by the Company of claims involving this reinsurance, when made by the Company, shall be unconditionally binding on the Reinsurer, except as otherwise provided specifically in this Agreement.

2

CAPTIVE.WPD
12/28/00

2.    The Company shall, at the request of the Reinsurer, furnish the Reinsurer a copy of any of the Policies and all endorsements thereto which in any manner affect this Agreement and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

3.    The Company will pay or credit the Reinsurer up to the amount of the Reinsurer's interest for amounts attributable to salvage, reimbursement obtained or recovery made by the Company relating to any of the Policies, after deducting the actual cost (excluding Company salaries and office expenses) of obtaining such salvage or reimbursement or making such recovery, and after the Company has been reimbursed up to the amount of its interest.


## ARTICLE IV - CURRENCY; TIMING OF PAYMENTS

Except as otherwise provided in ARTICLE VI, any payment the Reinsurer is required to make or any funds the Reinsurer is required to provide under the terms of this Agreement will be payable in the currency of the United States of America and will be paid or provided no later than fifteen (15) calendar days after the date of any invoice the Company sends to the Reinsurer therefor .


## ARTICLE V - PAID LOSS DEPOSIT FUND; CASH CALL

The Claims Adjusting Service, if any, indicated in the applicable Addenda will bill the Insured directly for, and will hold and adjust, the Paid Loss Deposit Fund, if one is required.

If for any reason the services of the Claims Adjusting Service are terminated, or if no Claims Adjusting Service is indicated in an Addendum, the Company shall assume the claim handling and claim administration services, and the Paid Loss Deposit Fund will be calculated, adjusted and held as provided below:

1.    The Company will, with funds to be provided by the Reinsurer, establish and maintain a Paid Loss Deposit Fund, the purpose of which is to provide a source of funds for payment of Reinsurer's liability under this Agreement. The initially required amount of the Paid Loss Deposit Fund for the reinsured Policies listed on each respective Addendum hereto shall be the amount specified as "Initial Paid Loss Deposit Fund" on each such Addendum. The Company will have the right to adjust the required amount of the Paid Loss Deposit Fund six (6) months after the effective date of this Agreement and quarterly thereafter. The adjusted required amount of the Paid Loss Deposit Fund will be a sum not greater than one and one-half (1-1/2) months of average monthly billings under the Policies for the preceding three (3) months for (i) Paid Losses and (ii) paid Allocated Loss Adjustment Expense, provided that the minimum required amount of the Paid Loss Deposit Fund shall be $1,000 for each Addendum hereto.

2.    If, during any calendar month following the effective date of this Agreement, the Company becomes obligated to pay any amount representing the Reinsurer's liability under this Agreement that exceeds the required amount of the Paid Loss Deposit Fund at such time, the Reinsurer shall, not later than five (5) calendar days after receipt of a written demand by the Company, forward funds to the Company sufficient to cover payment of any such amounts greater than the Paid Loss Deposit Fund balance. The Reinsurer will be credited in a subsequent Reconciliation Statement for the amount of funds so forwarded, less any interest paid.

3.    If the Reinsurer fails to make any payment to the Company (or to a Claims Adjusting Service collecting such payment on the Company's behalf) within the time required for such payment by this Agreement, the Company will have the option to change the foregoing formula for adjusting the required balance of the Paid Loss Deposit Fund by increasing the multiplier of one and one-half (1-1/2) months of average monthly billings to a multiplier no higher than three (3) months of average monthly billings.

4.    Following cancellation or nonrenewal of any Policy or any successor Policy, the Company may increase the required amount of the Paid Loss Deposit Fund to an amount deemed necessary by the Company in its sole discretion, based upon the Company's

CAPTIVE.WPD
12/28/00

analysis of the "Incurred Losses", as well as future loss development and the amount of losses incurred but not reported, as estimated by the Company, as well as "Allocated Loss Adjustment Expense".

## ARTICLE VI - REINSURANCE PREMIUM; RECONCILIATION

1. The reinsurance premium payable to the Reinsurer for the reinsurance provided hereunder shall be the amount of premium received by the Company under the Policies less the amount of any return premium (which amounts shall be determined in accordance with applicable manual rates, appropriate experience modifications, premium discount factors and retrospective rating endorsements) minus Company Premium Expenses in the amounts provided in the respective Addenda hereto.

2. The reinsurance premium shall be payable by the Company to the Reinsurer within the time period specified in ARTICLE VII below, and shall be reconciled against amounts payable by the Reinsurer as provided in Paragraph 3 of this ARTICLE.

3. Any reinsurance premium payable by the Company to the Reinsurer shall be reconciled and set off against the following liabilities of the Reinsurer, to the extent such liabilities are outstanding at the time such reinsurance premium is due and payable:

   a. the sum of the Initial Paid Loss Deposit Fund amounts specified in the Addenda hereto;

   b. the amount necessary to establish or maintain the adjusted required amount of the Paid Loss Deposit Fund; and

   c. Reinsurer's liability under ARTICLE II of this Agreement for Paid Losses, paid Allocated Loss Adjustment Expense and paid Unallocated Loss Adjustment Expense.

## ARTICLE VII - STATEMENT OF ACCOUNTS; TF&L

1. Not later than ten (10) calendar days after each payment of premium under the Policies is received by the Company, the Company will issue to the Reinsurer a Reconciliation Statement showing the outstanding amounts payable by the Reinsurer for the items described in Subparagraphs 3.a., 3.b., and 3.c. of Article VI and reconciling such amounts against the amount of such premium payment received by the Company. If the result of any such reconciliation is that the Reinsurer owes money to the Company, the Reinsurer will pay the amount so owed within the time required by this Agreement. If the result of any such reconciliation is that the Company owes money to the Reinsurer, the Company will pay the amount so owed no later than ten (10) calendars days after the date that the Reconciliation Statement is issued.

2. The parties hereto acknowledge and agree that the Reinsurer's liability hereunder may extend past the time that the Company is receiving premiums under the Policies, and past the expiration date of the Policies and the termination of this Agreement and that, in such event, the reconciliations required hereunder may involve only a computation of the Reinsurer's liability to the Company.

3. Upon expiration or cancellation of any Policy, the Company's earned premium thereunder will be computed in accordance with applicable rules, rates, rating plans, premiums and minimum premiums, and the actual TF&L payable by the Company related thereto will be determined. If the amount of such earned premium as finally determined is different from the amount of premium that was utilized to determine the amount of the reinsurance premium payable hereunder, or if the amount of actual TF&L payable by the Company is different from the estimated TF&L used to determine the amount of the reinsurance premium payable hereunder, all prior reconciliations will be recalculated utilizing the amount of actual earned premium and/or the actual TF&L. If the recalculation of the reconciliations indicates that the Reinsurer owes money to the Company, the Reinsurer will pay the amount owed within the time required by this Agreement; if such recalculation indicates that the Company owes money to the Reinsurer, the Company will pay the amount owed at the time the Company mails (or otherwise transmits) its recalculation of the prior reconciliation to the Reinsurer.

## ARTICLE VIII – COLLATERAL

4

CAPTIVE.WPD
12/28/00

1.  The Reinsurer shall be the applicant for and provide to the Company, no later than 15 days after the effective date of this Agreement, an irrevocable letter of credit (hereinafter the "LOC") in an amount and form, issued by a financial institution, acceptable to the Company, or cash collateral in an amount acceptable to the Company, to secure the obligations of the Reinsurer hereunder. The secured obligations shall include but not be limited to, payment of all Paid Losses, paid Allocated Loss Adjustment Expense and Unallocated Loss Adjustment Expense as provided in the Addenda hereto, and actual reserves for losses, unearned premiums and reserves for losses incurred but not reported under the Policies, which reserves shall be established by the Company. The Reinsurer's duty to provide such collateral security shall continue until the Company has determined that all of the Reinsurer's obligations under this Agreement have been or will be met.

2.  Any LOC provided pursuant hereto may be drawn upon at any time, and any cash collateral provided pursuant hereto may be withdrawn at any time, notwithstanding any other provisions in this Agreement, and may be utilized by the Company or any successor by operation of law of the Company (including, without limitation, any liquidator, rehabilitator, receiver, or conservator) for the following purposes:

    (i)   to reimburse the Company for the Reinsurer's share of premiums returned to the owners of the Policies reinsured hereunder due to cancellation of any such Policies;

    (ii)  to reimburse the Company for the Reinsurer's share of Losses and paid Allocated Loss Adjustment Expenses paid by the Company under the terms and provisions of the Policies reinsured hereunder;

    (iii) to fund an account with the Company in an amount at least equal to the deduction, for reinsurance ceded hereunder, from the Company's liabilities for Policies ceded hereunder. Such amount shall include, but not be limited to, amounts for Policy reserves, reserves for claims and losses incurred (including losses incurred but not reported), loss adjustment expenses (including Unallocated Loss Adjustment Expense and Allocated Loss Adjustment Expense), and unearned premiums;

    (iv)  to pay any other amounts the Company claims are due under this Agreement; and

    (v)   to return to the Reinsurer amounts drawn on the LOC, or any cash collateral, in excess of the actual amounts required in this Article or subsequently determined not to be due the Company."

    All the foregoing shall be applied without diminution because of insolvency on the part of the Company or the Reinsurer.

3.  In the event that the Reinsurer fails to provide such LOC or cash within the time set forth above, the Company may at its option, (i) act to cancel the Policies and terminate this Agreement, (ii) draw the full amount of any LOC provided by the Reinsurer under any other Reinsurance Agreement entered into with the Company and/or (iii) withhold payment of any reinsurance premium due to the Reinsurer hereunder.

4.  The Reinsurer will, not later than thirty (30) days prior to the termination or expiration of any LOC, provide to the Company either (i) cash collateral, if acceptable to the Company, in the amount required by the Company, or (ii) a substitute LOC issued by a financial institution, and in an amount and form, acceptable to the Company, which will become effective immediately upon the termination or expiration of the prior LOC. The Reinsurer will likewise continue to provide such substitute LOCs or cash collateral, if acceptable to the Company, until the Company is satisfied that the Reinsurer's financial obligations under this Agreement have been or will be met. If the Reinsurer (i) fails to provide the Company with any such substitute LOC or cash collateral, or (ii) fails to increase the amount of any LOC or to provide additional cash collateral at any time upon the Company's request, the Company will have the right to draw upon the full amount of the existing LOC and apply such funds to secure and to discharge the obligations of the Reinsurer hereunder.

5.  Annually, the Company shall review and redetermine the amount of the Reinsurer's obligations hereunder, and the amount of collateral security required pursuant to this article. At such time, the Reinsurer will provide audited financial statements, interim financial statements, and any other financial information requested by the Company for the purpose of evaluating the financial condition of the Reinsurer. The Reinsurer will provide any needed increases in the amount of the LOC within thirty days of the

Company's request for any additional required amount of the LOC. The Company will effect any decreases in the amount of the LOC promptly, provided that the Reinsurer is not in breach of any of its obligations under this Agreement.

6.    The Company will have the right to require that any such substitute LOC or cash collateral be in an amount greater than that of the LOC it is replacing, unless the substitution is being made solely due to a change in financial institutions, and not due to an adjustment of the collateral amount by the Company. The Reinsurer shall deliver all security or substitute security to the Company at ARM Credit Risk Management, 1601 Chestnut Street, Philadelphia, PA 19192-0000, Attention: Collateral Manager.

7.    The Reinsurer shall provide to the Company, upon each request, copies of the Reinsurer's most current financial statements until such time as the Company is satisfied that the Reinsurer's financial obligations under this Agreement have been or will be met.

## ARTICLE IX - TAXES

1.    The Company will be liable for payment of all taxes on premiums received under the Policies.

2.    In addition to its liability under ARTICLE II, the Reinsurer will be liable for payment of all taxes on reinsurance premiums paid hereunder.

## ARTICLE X - ARBITRATION

1.    As a condition precedent to any right of action hereunder, any dispute arising between the parties hereto concerning the interpretation of this Agreement or any transaction hereunder shall be referred to and resolved by a board of arbitration composed of two (2) arbitrators and an umpire, meeting in Philadelphia, Pennsylvania or another location mutually agreed to by the Company and the Reinsurer.,.

2.    The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies other than the parties or their affiliates. Each party shall appoint an arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If either party fails to appoint an arbitrator within thirty (30) days after receiving a written request to do so, the requesting party shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within ten (10) days after their nominations, each of them shall name three (3) candidates, of whom the other shall decline two (2) and the decision shall be made by drawing lots. In the event of death, disability or incapacity of any arbitrator, a replacement shall be named by the process used to select the arbitrator to be replaced.

3.    The claimant shall submit its initial brief not later than twenty (30) days after appointment of the umpire. The respondent shall submit its brief no later than thirty (30) days thereafter and the claimant may submit a reply brief no later than fifteen (15) days after the filing of the respondent's brief.

4.    The board shall make an award with regard to the custom and usage of the insurance and reinsurance business as of the effective date of this Agreement or of any Addendum hereto, if the dispute involves such Addendum. The board is relieved of all judicial formalities and may abstain from following strict rules of law. The board shall issue its award in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The hearing shall be held not later than thirty (30) days after receipt of all briefs. The board shall make its award within forty-five (45) days following the termination of the hearings unless the parties consent to an extension. A decision by the majority of the members of the board shall become the award of the board and shall be final and binding upon all parties to the proceeding. Either party may apply to any court of competent jurisdiction for an order confirming the award. A judgment of that court shall thereupon be entered upon the award. If such an order is issued, the attorneys' fees and court costs of the party so applying will be paid by the party against whom confirmation is sought.

5.    Each party shall bear the fees and expenses of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire and other expenses of the arbitration. The board may, by unanimous vote, allocate any costs and fees against the losing party upon a determination that the position of the losing party was groundless, specious, or otherwise without merit.

CAPTIVE.WPD
12/28/00

6.    This Article X shall survive the termination of the Agreement.

## ARTICLE XI - TERMINATION

1.    This Agreement may be canceled in whole or in part by the Company by giving ninety (90) days prior written notice to the Reinsurer. The Reinsurer shall have the right to cancel this Agreement by giving a number of days' prior written notice to the Company which shall be not less than thirty (30) more than the longest prior notice of cancellation period required under any Policy.

2.    In the event that any of the Policies is canceled, this Agreement shall automatically be terminated with respect to such Policy as of the effective date of its cancellation.

3.    In either such event, the Reinsurer will be paid a pro rata portion of the reinsurance premium to which it would have been entitled had this Agreement not been terminated, either as to such canceled Policy or Policies or as to all Policies, as the case may be.

The Reinsurer acknowledges that the Company's obligations which accrue during the term of the Policies will survive the termination of the Policies; and agrees that the Reinsurer's obligations under this Agreement will correspondingly survive any termination of the Policies and the termination of this Agreement. If this Agreement terminates as to one or more Policies, the Reinsurer's liability under ARTICLE II hereof will continue with respect to losses and claims incurred under such Policies prior to the effective date of termination of this Agreement and all Paid Losses, Allocated Loss Adjustment Expense and Unallocated Loss Adjustment Expense related thereto.

## ARTICLE XII - COLLECTION EXPENSE; INTEREST

The Reinsurer will, in addition to its liability under ARTICLE II, reimburse the Company for attorneys' fees and court costs incurred in attempting to collect amounts, including interest, due and payable to the Company hereunder, which are not paid within the period of time required by this Agreement. Each party will, in addition to its liability under this Agreement, reimburse the other party for an interest charge at the monthly rate of one and one-half percent (1.5%) on any such outstanding, overdue amount payable to the other party hereunder, said charge to commence at the time any such amount was due and payable to the other party hereunder,.

## ARTICLE XIII - ERRORS AND OMISSIONS

Inadvertent delays, errors or omissions made by Company or Reinsurer in connection with this Agreement or any transaction hereunder shall not relieve the other party from any liability which would have attached, had such delay, error or omission not occurred, provided that such error or omission will be rectified as soon as possible after discovery.

## ARTICLE XIV - INSOLVENCY

In the event of insolvency of the Company, this reinsurance shall be payable directly to the Company, or to its liquidator, rehabilitator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, rehabilitator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, rehabilitator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the Company indicating the Policy reinsured, which claim would involve a possible liability on the part of the Reinsurer, within a reasonable time after such claim is filed in the conservation, rehabilitation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses that it may deem available to the Company or its liquidator, rehabilitator, receiver conservator or statutory successor. The

CAPTIVE.WPD
12/28/00

expense thus incurred by the Reinsurer shall be chargeable, subject to the approval of the court, against the Company as part of the expense of conservation, rehabilitation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

It is further agreed and understood that as to all reinsurance made, ceded, renewed or otherwise becoming effective hereunder, in the event of the insolvency of the Company, all amounts payable under this Agreement shall be paid by the Reinsurer to the Named Insured under the Policies, including but not limited to Allied Holdings, Inc., Allied Automotive Group, Inc. and other subsidiaries that are insured under the Policies, when the Reinsurer, with the written consent of Allied Holdings, Inc. has assumed the obligations of the Company under any of the Policies as direct obligations of the Reinsurer to the payees under any of the Policies and in substitution for the obligations of the Company to such payees.

## ARTICLE XV - ADDITIONAL TERMS AND CONDITIONS

1.  This Agreement shall be governed by and construed according to the laws of the Commonwealth of Pennsylvania without regard to conflict of law principles or the application of the laws of any other jurisdiction, except to the extent otherwise provided in ARTICLE X.

2.  This Agreement may not be assigned by the Reinsurer unless the written approval of the Company is first obtained.

3.  Except for a cancellation in accordance with the provisions of ARTICLE XI hereof, this Agreement may not be released, discharged, changed or modified except by an instrument in writing signed by a duly authorized representative of both of the parties respectively.

4.  Any notices, requests or other communications hereunder will be in writing and will be deemed to have been delivered when deposited in the United States mail with proper postage fees prepaid, addressed as follows:

    (i)   if to Reinsurer, then to:  Haul Insurance Limited
                                     c/o AON Insurance Managers (Cayman) Ltd.
                                     2nd Floor, Buckingham Square
                                     720 West Bay Road
                                     Grand Cayman, Cayman Islands

    (ii)  if to Company, then to:  ACE Risk Management
                                   500 Colonial Center Pkwy.
                                   Suite 200
                                   Roswell, Georgia 30076

5.

5.  Entire Agreement - this Agreement (and any written Addenda or Amendments hereto) constitutes the entire agreement between the parties and supersedes all prior agreements or understandings, whether oral or written, relating to the subject matter hereof.

6.  Successors and Assigns. All the terms of this agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, whether so expressed or not; provided, however, that no party hereto shall assign or otherwise transfer any of its rights or obligation hereunder with the prior written consent of the other parties hereto.

7.  Counterparts - This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute but one and the same instrument.

## ARTICLE XVI - JURISDICTION

8

CAPTIVE.WPD
12/28/00

This Article is not intended to conflict with or override the parties' obligation to arbitrate their disputes in accordance with the Arbitration article.

The Reinsurer agrees, at the request of the Company, to submit to the jurisdiction and venue of the United States District Court, Eastern District of Pennsylvania and to comply with requirements necessary to give that court jurisdiction, and to abide by the final decision of that court in any action arising from or related to the Reinsurer's performance or alleged failure to perform its obligations hereunder or of an appellate court in the event of an appeal.

The Reinsurer hereby designates the Commissioner of Insurance of the Commonwealth of Pennsylvania as its true and lawful agent for service of any lawful process in any action, suit or proceeding instituted by or on behalf of the Company and related to this Agreement.

IN WITNESS WHEREOF, the parties, by their duly authorized officers, intending to be legally bound, have signed this Agreement on the dates set forth below, to be effective as of the Effective Date.

Haul Insurance Limited

By: _J.A. Terwilliger_

Title: _ATTORNEY-IN-FACT_

Date: _August 13 2003_

ACE American Insurance Company

By: _Kimberly Reed_

Title: _SVP- APM Branch Manager_

Date: _8/13/03_

CAPTIVE.WPD
12/28/00

9

IN WITNESS WHEREOF, this 2003 Addendum to Combined Multi-Line Program Agreement dated <u>March 1, 2003</u>, has been executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

ALLIED HOLDINGS, INC.                    ACE AMERICAN INSURANCE COMPANY

Name: _____            Name: _____

Title: ATTORNEY-IN-FACT                 Title: SVP- ARM Branch Manager

Date: August 13, 2003                    Date: 8/13/03

CMULTPA
4/20/98                                        4

**2003 ADDENDUM TO**

**REINSURANCE AGREEMENT**
(the "Agreement")

**by and between**

**Haul Insurance Limited**

and

**ACE American Insurance Company**

**Effective as of:  March 1, 2003**

The terms and conditions stated in this 2003 Addendum apply only to the reinsured Policies listed below. All other terms and conditions of the Agreement are hereby incorporated by reference in their entirety.

**Policy Listing**

| REINSURED POLICIES | | |
|---|---|---|
| Policy Number | Policy Period | Issuing Company |
| CTOG21739248 | 03/01/03 – 01/01/04 | ACE American Insurance Co. |
| CTOG21739285 | 03/01/03 – 01/01/04 | ACE American Insurance Co. |
| CTOG21739327 | 03/01/03 – 01/01/04 | ACE American Insurance Co. |

## CONTRACTUAL INDEMNITY POLICIES:

**CAPTIVE RETENTION LIMITS:** The Reinsurer's Captive Retention Limits (referred to in Article II of the Agreement) with respect to the individual Contractual Indemnity Policies listed above shall be as follows :

Policy **CTOG21739248 (Workers' Compensation):**

1.  the first $650,000 per accident/Nil aggregate, plus $500,000 per accident/$500,000 aggregate excess of $650,000 per accident/Nil aggregate of Paid Loss arising out of accidents involving one or more employees of the Insured, and

2.  the first $650,000 per accident/Nil aggregate, plus $500,000 per accident/$500,000 aggregate excess of $650,000 per accident/Nil aggregate of Paid Loss arising out of Occupational Disease affecting any employee of the Insured; and

3.  the Reinsurer's Pro Rata Share of Allocated Loss Adjustment Expense.

CAPTIVE.WPD
12/28/00

1

Policy CTOG21739285 (General Liability):

1. the first $500,000 per occurrence/Nil aggregate of Paid Loss per Occurrence arising out of the Products-Completed Operations Hazard; and

2. the first $500,000 per occurrence/Nil aggregate of Paid Loss for each Occurrence arising out of Coverage A or C, other than the Products- Completed Operations Hazard; and

3. the first $500,000 per occurrence/Nil aggregate of Paid Loss for each covered person or organization arising out of Coverage B, other than the Products- Completed Operations Hazard; and.

4. the Reinsurer's Pro Rata Share of Allocated Loss Adjustment Expense.

Policy CTOG21739327 (Auto Liability):

1. the first $500,000 per accident/Nil aggregate, plus $500,000 per accident/$1,500,000 aggregate excess of $500,000 per accident/Nil aggregate, plus $1,000,000 per accident/$1,000,000 aggregate excess of $1,000,000 per accident/$1,000,000 excess of $500,000 per accident/Nil aggregate of Paid Loss arising out of Statutory No-Fault Automobile Liability; and

2. the first $500,000 per accident/Nil aggregate, plus $500,000 per accident/$1,500,000 aggregate excess of $500,000 per accident/Nil aggregate, plus $1,000,000 per accident/$1,000,000 aggregate excess of $1,000,000 per accident/$1,000,000 excess of $500,000 per accident/Nil aggregate of Paid Loss arising out of Automobile Liability, except Statutory No-Fault Automobile Liability; and

3. the first $500,000 per accident/Nil aggregate, plus $500,000 per accident/$1,500,000 aggregate excess of $500,000 per accident/Nil aggregate, plus $1,000,000 per accident/$1,000,000 aggregate excess of $1,000,000 per accident/$1,000,000 excess of $500,000 per accident/Nil aggregate of Paid Loss arising out of Uninsured/Underinsured Motorist Coverage; and

4. the Reinsurer's Pro Rata Share of Allocated Loss Adjustment Expense.

**COMPANY PREMIUM EXPENSES:** Commencing on the effective date of this Addendum, the Insured will make monthly payments of Company Premium Expenses (referred to in Article VI of the Agreement) to the Company for the Contractual Indemnity Policies listed above as follows:

1. CTOG21739248 (Workers' Compensation): $13,112,690, the first such payment being $3,298,655 and the next three (3) being $3,271,345 each, effective dates 04/01/03, 05/01/03, 06/01/03 and 07/01/03 respectively, , with payment due on April 15, May 15 and June 15, and July 15, 2003, respectively.

2. CTOG21739285 (General Liability) $6,000,000, prepaid, Effective date 03/01/03, with payment due on March 15, 2003.

3. <u>CTOG21739327 (Auto Liability)</u>: <u>$6,000,000</u>, prepaid, Effective date 03/01/03, with payment due on March 15, 2003.

Recalculation of Company Premium Expenses: At the time of audit, the Company will recalculate and the Insured will pay Company Premium Expenses related to the policies above as follows:

a. <u>CTOG21739248 (Workers' Compensation)</u>: <u>$13,112,690</u>, adjustable at a rate of <u>$7.6964</u> per $100 of Payroll, estimated at $170,373,812; plus

b. <u>CTOG21739285 (General Liability)</u>: <u>$6,000,000</u>, adjustable at a rate of <u>$30.8463</u> per 1,000 of "Calculated Miles," estimated at 194,513,010; plus

c. <u>CTOG21739327 (Auto Liability)</u>: <u>$6,000,000</u>, adjustable at a rate of <u>$30.8463</u> per 1,000 of "Calculated Miles," estimated at 194,513,010.

UNALLOCATED LOSS ADJUSTMENT EXPENSES- $0

## FEDERAL EXCISE TAX

Reinsurer has stipulated that they are "FET Exempt" and reinsurance premiums payable hereunder do not include Federal Excise Tax. Should any Federal Excise Taxes be levied on such reinsurance premiums, the reinsurer is responsible for payment thereof.

## PAID LOSS DEPOSIT FUND AND CLAIMS ADJUSTING SERVICE

For all Policies listed on this 2003 Addendum, the following amount is payable by the Reinsurer as of Effective Date of this Addendum, as provided in Article IV of the Agreement:

Initial Paid Loss Deposit Fund:                            $ <u>0</u> .

The responsibility for handling claims under the Policies has been assigned to USI of Georgia, Inc., which is the Claims Adjusting Service selected at the request of the named insured under the Policies. Should USI of Georgia no longer be the Claims Adjusting Service, and should the Company commence handling claims under the Policies, the Company may require a Paid Loss Deposit Fund, as described in Article V of the Agreement.

IN WITNESS WHEREOF, the parties, by their duly authorized officers, intending to be legally bound, have executed this 2003 Addendum to the Reinsurance Agreement dated <u>March 1, 2003</u>, on the dates set forth below, to be effective as of <u>March 1, 2003</u>.

Haul Insurance Limited                                ACE American Insurance Company

By: _____              By: _____

Title: ATTORNEY-IN-FACT                      Title: SVP - ARM Branch Manager

Date: August 13, 2003                              Date: 8/13/03

CAPTIVE.WPD                                    3
12/28/00